IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MARILYN MITCHELL, KEVIN BALE,　§
and SUSAN BOORSTEIN,　　　　　　§
　　　　　　　　　　　　　　　　　§
　　　　　　　Plaintiffs,　　　　§
　　　　　　　　　　　　　　　　　§
v.　　　　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　　　§　　CIVIL ACTION NO. H-04-3470
CONTINENTAL AIRLINES, INC.　　　§
and INTERNATIONAL ASSOCIATION　§
OF MACHINISTS AND AEROSPACE　　§
WORKERS,　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　　　§
　　　　　　　Defendants.　　　　§


## MEMORANDUM OPINION AND ORDER


　　　Plaintiffs, Marilyn Mitchell, Kevin Bale, and Susan Boorstein,
bring this action against Continental Airlines, Inc. (Continental)
and the International Association of Machinists and Aerospace
Workers (IAMAW) seeking to vacate the Decision of the Chairman and
Award of the System Board of Adjustment (Decision and Award) in the
arbitration between IAMAW and Continental on grievances brought by
Mitchell, Bale, and others regarding Continental's retroactive
adjustment of flight attendants' seniority dates.  Pending before
the court is Plaintiffs' Petition for Review (Docket Entry No. 1).
The parties agree that the case should be resolved by dispositive
motion.[1]  For the reasons explained below, the court concludes that
the petition should be denied, and this action dismissed.

---

[1]Plaintiffs' Reply Brief in Support of Petition for Review,
Docket Entry No. 54, p. 2 n.1.

## I.  <u>Factual Background</u>

Plaintiffs are Continental flight attendants whose employment is governed by a collective bargaining agreement (CBA) between Continental and the IAMAW under which the IAMAW serves as the exclusive bargaining representative for all flight attendants.[2] The CBA contains, <u>inter alia</u>, procedures for resolving grievances over the construction and application of its terms, which provide for final and binding arbitration before a Systems Board of Adjustment.[3]

---

[2]See Petition for Review (PR), Docket Entry No. 1, ¶ 2, and Excerpts for Agreement between Continental Airlines, Inc. and IAMAW, Exhibit 3 in Joint Appendix to Briefs of Continental Airlines, Inc., and IAMAW, attached to Docket Entry No. 47 (Joint Appendix).  All exhibits contained in the Joint Appendix are authenticated by the Declaration of Robert S. Clayman, IAMAW's counsel at the arbitration hearing (Clayman Declaration).  Although plaintiffs argue that many of the exhibits in the Joint Appendix should be stricken because Clayman has not properly authenticated his Declaration, plaintiffs have not argued that the grievance procedures they followed are non-binding, or that the exhibits contained in the Joint Appendix are not the documents that defendants represent them to be, i.e., true copies of excerpts from the CBA, grievances filed with Continental, exhibits presented to the arbitration board, and communications between the parties. Moreover, the Joint Appendix contains many exhibits to which plaintiffs have lodged no objection.  The only exhibits on which the court has relied are exhibits to which plaintiffs have not objected.  See Objections to the Exhibits in Defendants' Joint Appendix, Exhibit A attached to Plaintiffs' Reply Brief in Support of Petition for Review, Docket Entry No. 54.

[3]See Exhibit 3 in the Joint Appendix and Clayman Declaration, ¶ 3.  Clayman explains that a Systems Board of Adjustment is the airline industry counterpart of the statutorily established National Railway Adjustment Board (NRAB) process for resolving industry-related disputes.  See 45 U.S.C. §§ 153, 184.

Continental flight attendants accrue various types of seniority, which are classified as either competitive or non-competitive. The CBA requires Continental to post bi-annually a list of flight attendants' competitive seniority dates. Flight attendants have thirty days after the list is posted to protest errors. Competitive seniority is not at issue in this case. (PR ¶ 14) The CBA does not require Continental to post flight attendants' non-competitive seniority dates. (PR ¶ 15) Instead, non-competitive seniority dates are communicated to flight attendants in various ways. Pay seniority dates appear on pay stubs. Vacation seniority is reported in annual statements to individual flight attendants. Jump-seat and pass-riding seniority is based either on the "JA" entry in Continental's SONIC computer system or on the date showing on a company identification card. Flight attendants requesting tickets on-line have sometimes been surprised to find that their jump-seat and pass-riding seniority dates have been adjusted without notice. (PR ¶ 17)

In 1996 Boorstein learned that her jump-seat seniority date had been changed from her date of hire, November 11, 1968, to a date in 1971. (PR ¶ 62) When she belatedly received a cake for her 30th anniversary with Continental, Boorstein learned that her company service date had also been changed. (PR ¶ 63) Boorstein alleges that when she inquired about the adjustments "her seniority was again adversely and unequally impacted." (PR ¶ 64)

In 1997 Mitchell discovered that her vacation seniority date was less advantageous than her records indicated it should have been.  (PR ¶ 25)  Mitchell alleges that when she questioned the accuracy of her vacation seniority date, Continental readjusted it even less favorably.  (PR ¶ 25)  In 1999 Mitchell contacted the IAMAW "about various seniority and contract violations." (PR ¶ 31) Plaintiffs allege that during a meeting with a representative of Continental's Human Resources office Mitchell was told that "Continental was aware that everyone had not been similarly adjusted . . . but . . . that Continental did not have the time or the manpower to go through the records of 25,000 flight attendants to determine if the seniority dates were adjusted as they should have been." (PR ¶ 35)

On May 24, 2000, Mitchell filed grievance no. 05446 in which she complained that on May 20, 2000, unfair, adverse adjustments were made to her non-competitive seniority dates.  (PR ¶ 37)  In the top, right-hand corner of the grievance is a stamped notice signed and dated by Mitchell that states:  "I hereby authorize the International Association of Machinists, with full power of attorney, to represent me in all stages of the Grievance Procedure in the presenting and settling of this grievance."[4]  Mitchell's grievance was denied following both a step-one hearing held on

---

[4]See Exhibit 8 in the Joint Appendix at page 9.

July 12, 2000, and a step-two hearing held on September 8, 2000. (PR ¶ 38)  Although originally set for April 10, 2001, arbitration before the National Mediation Board took place in Washington, D.C., on February 5-6, 2002.  (PR ¶¶ 38-41)

In 1997 Bale discovered that his vacation seniority date was less advantageous than his records indicated it should have been. (PR ¶¶ 50-51)  In the fall of 2000 Bale contacted Continental's Human Resources Department to inquire about his non-competitive seniority dates.  (PR ¶ 53)  Plaintiffs allege that on October 30, 2000, Continental advised Bale that his seniority dates had been adjusted for company offered leaves that he had taken between 1991 and 1995.  (PR ¶ 53)  Based on Bales' rate of pay, plaintiffs allege that Bale's vacation seniority date must have been adjusted sometime after 1996 and before Bale was to have received an extra week of vacation in 1997.  (PR ¶¶ 51 and 55)

On August 15, 2000, Bale filed a grievance no. 06082 in which he complained that on that date Continental engaged in an unfair and unequal adjustment of non-competitive jump-seat seniority.[5] (PR ¶ 57)  On June 27, 2001, Bale filed grievance no. 06540 in which he complained that on May 30, 2001, Continental violated the CBA by including Diane Carr and others in the same category (i.e., managerial employees at the level of director or above) in the

---

[5]See Exhibit 5 in the Joint Appendix.

jump-seat seniority system.[6]  (PR ¶ 57)   In the top, right-hand corner of each of Bale's grievances is a stamped notice signed and dated by Bale that states:  "I hereby authorize the International Association of Machinists, with full power of attorney, to represent me in all stages of the Grievance Procedure in the presenting and settling of this grievance."[7]  Each of Bale's grievances was denied following both step-one and step-two hearings.[8]  (PR ¶ 57)   Continental explained that Bale's non-competitive jump-seat seniority date had been adjusted in compliance with various work rules and agreements that allow flight attendants to maintain but not to accrue non-competitive seniority during periods of personal and/or company offered leave.   An arbitration was scheduled for February 5, 2002.  (PR 57)

Mitchell's grievance no. 05446 and Bale's grievance nos. 06082 and 06540 were considered together with grievances filed by three other individuals (Sonnichsen, Bice, and Shaw) at an arbitration hearing conducted by a three-person System Board (Board) consisting of a union representative, a company representative, and a neutral third-party chair on February 5-6, 2002, in Washington, D.C.[9]  "The

---

[6]See Exhibit 20 in the Joint Appendix.

[7]See Exhibit 5 (grievance no. 06082) at page 5 and Exhibit 20 (grievance no. 06540) at page 4, in the Joint Appendix.

[8]See Exhibits 5 and 20 in the Joint Appendix.

[9]See Decision of the Chairman and Award of the Board, Exhibit 1 in the Joint Appendix at page 2.

five individual grievances, which [were] brought together for decision, all involve[d] adjustments to vacation, pass, or company seniority, and all of which were made substantially after the events occurred which occasioned the adjustment of seniority by the company."[10]  "Testimony indicated that some adjustments were made when an individual flight attendant asked a question regarding his or her seniority.  Accordingly, in certain cases adjustments were made for some flight attendants, but not for others."[11]  The Board identified the issue in dispute -- "Were the various adjustments which were made to flight attendant seniority proper, as in some cases they were made long after the events which caused the adjustments, and, if not, what is the appropriate remedy?"[12]

The IAMAW argued to the Board that

the doctrine of estoppel bars the company from retroactively altering seniority dates to correct errors that the company has permitted to stand for long periods of time.  It further contend[ed] that the doctrine of laches bars the company from belatedly asserting a right to adjust seniority.  Finally, the [IAMAW] contend[ed] that the principles of disparate treatment prohibit the company from selectively adjusting seniority rights.  As a remedy the [IAMAW] suggest[ed] that: (1) the company be prohibited from making any adjustments to grievants' seniority to reflect an event that occurred more than one year in the past; (2) that the company be required to make grievants whole for the vacation and other benefits lost as a result of the company's adjustments to their

---

[10]Id. at p. 2.

[11]Id. at p. 4.

[12]Id.

-7-

seniority; (3) that, in the future, the company may only look back for one year in making adjustments to seniority, and that flight attendants have one year in which to challenge such seniority adjustments; and (4) that for a sixty (60) day period following the issuance of the decision in this case, flight attendants may notify the company that it retroactively adjusted their seniority to reflect an event that occurred more than one year ago and that the company shall rescind such adjustments and make the affected flight attendants whole for the vacation and other benefits lost as a result of the company's adjustments to their seniority.[13]

Continental argued that it had the right to adjust flight attendants' non-competitive seniority dates in compliance with work rules and agreements that allow flight attendants to maintain but not to accrue non-competitive seniority during periods of personal and/or company offered leave.   Continental contended that it "should not be held to the same time limits of thirty (30) days which are contained in the collective bargaining agreement because nothing in that agreement or the past practice of the parties indicates any intent to place such restrictions on the company's ability to administer seniority adjustments."[14]   Continental also argued that

[u]nderlying time limits on filing of claims is the interest in discouraging 'sleeping on one's rights' or appearing to acquiesce to a given policy or practice.   In contrast, there is no reason or principle justifying rejection, based merely on the passage of time, of accurate seniority adjustments.   [Continental suggested that if the Board concludes that the timing of

---

[13]Id. at pp. 4-5.

[14]Id. at p. 5.

adjustments is subject to some rule of reasonableness, a
time limit far different from the 30-day period for
filing protests and grievances must be used.  It
suggest[ed] that it should be no less than one calendar
year after conclusion of the event giving rise to the
adjustment (such as the flight attendant returning to
active duty), or after the regular publication of the
seniority date (such as for vacation seniority).
[Continental also argued] that if it is limited to going
back one year, flight attendants likewise should be
limited in seeking revisions of established seniority, or
adjustments made to seniority, more than one year prior
to the date of the adjustment.[15]

The Board first decided that it lacked "jurisdiction to go

back further than the beginning of the collective bargaining

agreement between the Company and the IAM[AW] at the time the

grievances being heard were filed,"[16] i.e., April 1, 2000.[17]  The

board then decided that

for retroactive adjustments that occurred within the last
two years [beginning on the date of the award, i.e.,
May 17, 2002], flight attendants may protest such
adjustments in their seniority dates which occurred more
than a year after the event which triggered the
adjustment.  They may do so within 30 days of the date on
which this award is rendered, and the parties shall have
the joint obligation of informing all flight attendants
of this decision.  Flight attendants who are on leaves of
absence shall have 30 days after their return to duty to
file such protests.  In the event a flight attendant
files such a protest, the company may look at any event
which concluded during the two-year period and make
adjustments to include any non-duty time which ended
during that two-year period.  For the future, the company

---

[15]Id. at pp. 5-6.

[16]Id. at pp. 6-7.

[17]See Title Page of Agreement between Continental Airlines,
Inc. and IAMAW, Exhibit 3 in the Joint Appendix.

shall have a period of one year from the date on which a
flight attendant returns to duty to adjust his or her
seniority date.   Likewise, flight attendants will be
limited in challenging adjustments made to seniority more
than one year prior to the date of the adjustment.
Within that time parameter, individual flight attendants
shall have 30 days from the date on which they first were
notified by the Company (e.g., System Seniority posting,
pay register, annual retirement statement, and annual
vacation notification letter) to file a protest.[18]

The Board also decided that its ruling would apply to Bale's

individual grievance,[19] denied grievances related to individuals

holding managerial positions at the director level and above as

untimely,[20] and denied Mitchell's "grievances claiming that the

Company incorrectly adjusted her vacation, pay and JA [jump seat]

seniority dates . . . because the adjustments were made

contemporaneously."[21]   Finally, the Board retained jurisdiction of

"all disputes arising based upon this decision including questions

regarding remedy."[22]

On May 20, 2002, Continental and the IAMAW jointly issued a

notice to all flight attendants stating that "Arbitrator Robert O.

Harris has issued his decision in the matter of several seniority

grievances.   His decision has required a joint obligation of the

---

[18]See Decision of the Chairman and Award of the Board,
Exhibit 1 in the Joint Appendix at pages 7-8.

[19]Id. at p. 8.

[20]Id.

[21]Id.

[22]Id. at p. 9.

parties to inform the flight attendants of the award."[23]  The joint
notice explained the terms of the award and warned that "all claims
must be filed no later than June 17, 2002.  Any request, claim or
grievance filed after that date will be considered untimely and
will not be processed.  Copies of the decision are posted in the
bulletin books for review or is available from your Union
representative."[24]  On the same day IAMAW District 142 also issued
a separate notice that described the arbitration decision to "[a]ll
Continental [f]light [a]ttendants."[25]

On or about October 14, 2002, the Board issued a second
Decision and Award that resolved grievances submitted to it
pursuant to the Decision and Award dated May 17, 2002.[26]  This
Decision and Award resolved grievance no. 07607 brought by Bale:

> The Grievant claims his pass, pay and vacation seniority
> dates were adjusted in October 2000.  The Company's
> records show that the adjustments were actually made in
> September 1998, outside the time frame for claims that
> can be submitted under the Decision and Award.[27]

Plaintiffs ask the court to vacate and remand the Decision and
Award, and to enjoin Continental from implementing it.  (PR ¶ 12)
Plaintiffs contend that the Decision and Award "fails to comply

---

[23]Exhibit 66 in the Joint Appendix.

[24]Id.

[25]Exhibit 67 in the Joint Appendix.

[26]Exhibit 2 in the Joint Appendix.

[27]Id. at pp. 2-3.

with the requirements of the . . . [Railway Labor Act] RLA, fails to conform or confine itself to matters within the scope of its jurisdiction, is based upon fraud or corruption and has denied [p]laintiffs and others similarly situated due process of law." (PR ¶ 12)

## II. **Plaintiffs' Claims**

In their Petition for Review (Docket Entry No. 1) plaintiffs assert claims for violation of the RLA and for violation of their right to due process guaranteed by the Fifth Amendment of the United States Constitution.

### A.   **Railway Labor Act Claims**

Plaintiffs assert two RLA claims:  (1) the Decision and Award does not comply with the RLA (PR ¶¶ 84-90), and (2) the Decision and Award fails to conform or confine itself to matters within the scope of the board's jurisdiction (PR ¶¶ 91-94).

Citing <u>McNair v. United States Postal Service</u>, 768 F.2d 730, 735 (5th Cir. 1985) (per curiam), defendants argue that this action should be dismissed because "individual employees lack standing to seek judicial review of a Systems Board of Adjustment award when, as here, a Union as their exclusive bargaining representative has prosecuted the grievances on their behalf."[28]  Citing <u>Acuff v. United Papermakers & Paperworkers, AFL-CIO</u>, 404 F.2d 169 (5th Cir.

_____

[28]Defendant Continental AirLines, Inc.'s Response to Plaintiffs' Petition for Review, Docket Entry No. 48, p. 13.

-12-

1968), <u>cert. denied</u>, 89 S.Ct. 1466 (1969), and <u>Clark v. Hein-Werner</u>

<u>Corp.</u>, 99 N.W.2d 132 (Wis. 1959), <u>cert. denied</u>, 80 S.Ct. 878

(1960), plaintiffs respond that defendants' argument is

contradicted by cases that have recognized an individual's standing

to challenge an arbitration award when the interests of the

individual employees differ from the interests of their union.[29]

    1.   <u>Standing Under the RLA</u>

In <u>McNair</u> the Fifth Circuit recognized that

> [w[hen a collective bargaining agreement establishes a
> mandatory, binding grievance procedure and gives the
> union the exclusive right to pursue claims on behalf of
> aggrieved employees, the results obtained by the union
> are normally conclusive of the employees' rights under
> the agreement.

<u>McNair</u>, 768 F.2d at 735 (citing <u>Hines v. Anchor Motor Freight,</u>

<u>Inc.</u>, 96 S.Ct. 1048 (1976), and <u>Vaca v. Sipes</u>, 87 S.Ct. 903

(1967)). "This means, of course, that an aggrieved worker whose

employment is governed by such an agreement normally lacks standing

independently to initiate grievance procedures, to sue for breach

of the collective bargaining agreement, or to attack in court the

results of the grievance process." <u>Id.</u> (citing <u>Acuff</u>, 404 F.2d at

171). Nevertheless, the court also recognized that "[t]hese rules

are not . . . without exception." <u>Id</u>. The court explained that

> if the union has breached its duty of fair
> representation, by arbitrarily refusing to pursue a claim
> through the grievance process or by doing so in a

---

[29]Plaintiffs' Reply Brief in Support of Petition for Review,
Docket Entry No. 54, fourth through seventh unnumbered pages.

> perfunctory or otherwise inadequate manner, an aggrieved employee is not foreclosed by the results of the grievance process.  He may sue his employer or his union or both but, in order to recover, he must prove that the union breached its duty of fair representation and that the employer breached the collective bargaining agreement.

Id. (citing Vaca, 87 S.Ct. at 903).

The cases plaintiffs cite similarly recognize that individual employees seeking to challenge an award made by a system board of adjustment at an arbitration, after the union -- as their exclusive bargaining representative -- has prosecuted the grievances on their behalf, must show both that the company breached the CBA and that the union breached its duty of fair representation.  See Acuff, 404 F.2d at 171 (individual employees lacked ability to intervene in arbitration proceeding where union had not breached its duty of fair representation); Clark, 99 N.W.2d at 136-137 (applying fair representation test to decide whether individual employees were entitled to relief from arbitration award).

2.  Fair Representation

(a)  Plaintiffs Disavow Fair Representation Claim

The Fifth Circuit's opinions in Acuff, 404 F.2d at 169, and McNair, 768 F.2d at 730, recognize that individual employees lack standing to challenge arbitration awards made pursuant to a binding arbitration provision where, as here, the aggrieved employees were represented by their union unless the employees can show that the

-14-

union breached its duty of fair representation.  Plaintiffs do not

dispute that the CBA at issue in this case contains a mandatory,

binding arbitration provision, or that the IAMAW held the exclusive

right to represent them at the arbitration.[30]  Moreover, plaintiffs

expressly disavow any claim that the IAMAW breached its duty of

fair representation:

> Plaintiffs assert no claims against IAMAW, and in
> particular, Plaintiffs do not assert any claim of breach
> of the duty of fair representation.  Rather, IAMAW is
> joined here for the sole reason that as a party to the
> arbitration which resulted in the Decision and Award, it
> is a party needed for just adjudication under Rule 19(a),
> Fed. R. Civ. P.

(PR ¶ 7)[31]  Nevertheless, citing <u>Clark</u>, 99 N.W.2d at 137-138,

plaintiffs argue that they have standing to bring this action

because "where the substantial interests of the representative are

not necessarily or even probably the same as those he purports to

---

[30]See Section 20(B)(9) of the April 1, 2000 - October 1, 2004,
Agreement between Continental Airlines, Inc., and the IAMAW,
Exhibit 3 in the Joint Appendix ("Decisions of the Board in all
cases referred to it shall be final and binding upon the parties
hereto and the parties must abide by that decision.").

[31]See IAMAW's Brief in Opposition, Docket Entry No. 47, p. 14
& n.3 (asserting that any duty-of-fair-representation claim would
be time barred by the six-month statute of limitations applicable
to such claims).  <u>See</u> <u>Wood v. Houston Belt & Terminal Ry.</u>, 958 F.2d
95, 97 (5th Cir. 1992) (six-month limitation period applies to
hybrid actions brought by individual employees against their
employers involving interpretation of a CBA, and against their
unions for breach of the union's duty of fair representation), and
<u>Smith v. Int'l Org. of Masters, Mates & Pilots</u>, 296 F.3d 380, 382-
383 (5th Cir. 2002) (six-month limitations period applies to fair
representation claim brought only against an employee's union).

represent, due process militates vigorously against giving the decision effect upon them."[32]

(b)  Differing Interests

Plaintiffs contend that "while IAM[AW] may assert that it is not interested in having the award set aside, IAM[AW] brief p. 15, [p]laintiffs, whose interests are different, have standing to seek review of that award."[33]  Plaintiffs explain that "[p]resumably, the Union does not want the award set aside based upon the prospective relief it obtained, IAM[AW] brief p. 15, . . . [but that] despite its assertion of success, it was highly unsuccessful in restoring [their] . . . selectively and improperly adjusted seniority."[34]

In <u>Clark</u> the union's successful pursuit of its position resulted in the demotion of several employees.  The Supreme Court of Wisconsin held that the arbitration award should not be binding upon adversely affected employees whose interests were diametrically opposed to the position espoused by the union where those employees were not given notice of the arbitration hearing. The Court explained that

> where the interests of two groups of employees are
> diametrically opposed to each other and the union
> espouses the cause of one in the arbitration, it follows

---

[32]Plaintiffs' Reply Brief in Support of Petition for Review, Docket Entry No. 54, fourth through seventh unnumbered pages, fifth-sixth unnumbered pages.

[33]<u>Id.</u> at sixth unnumbered page.

[34]<u>Id.</u> at n.6.

> as a matter of law that there has been no fair
> representation of the other group . . . even . . .
> though, in choosing the cause of which group to espouse,
> the union acts completely objectively and with the best
> motives.  The old adage, that one cannot serve two
> masters, is particularly applicable to such a situation.

99 N.W.2d at 137.  The Court reasoned that even though the employer's position at arbitration was identical to the plaintiffs' position, "the plaintiffs were entitled to notice of the hearing, and an opportunity to intervene, as a matter of sound labor policy." Id. at 138.  Since, as explained below, Clark is no longer good law on the duty of fair representation, and since the plaintiffs in this case either participated in the arbitration (Mitchell and Bale) or failed to file a grievance (Boorstein), the court is not persuaded that Clark supports plaintiffs' application for relief from the arbitration award.  See Gray v. Marinette County, 546 N.W.2d 553, 560 (Wis. Ct. App. 1996), and Miller Brewing Co. v. Brewery Workers Local Union No. 9, 562 F.Supp. 1368, 1373 (E.D. Wis. 1983), aff'd in part and rev'd in part on other grounds, 739 F.2d 1159 (7th Cir. 1984), cert. denied, 105 S.Ct. 912 (1985).

In Miller Brewing the court declared that "Clark is not good law." 562 F.Supp. at 1373.  The court explained that Clark was decided seven years before the United States Supreme Court announced the current standard for evaluating the union's execution of its duty in Vaca v. Sipes, in which the Court held that "[a] breach of the statutory duty of fair representation occurs only

when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." <u>Id.</u> (citing <u>Vaca</u>, 87 S.Ct. at 916). In <u>Gray</u> the court rejected <u>Clark</u> as having been "decided in 1959, while the law on fair representation was 'still in a state of flux.'" 546 N.W.2d at 560. The court explained that the Supreme Court's decision in <u>Humphrey v. Moore</u>, 84 S.Ct. 363 (1964), extinguished the rationale underlying the <u>Clark</u> decision. 546 N.W.2d at 560. In <u>Humphrey</u> the Supreme Court held that a union does not breach its duty of fair representation where it takes a "good faith position contrary to that of some individuals whom it represents []or in supporting the position of one group of employees against that of another." 84 S.Ct. at 371. Reasoning that "[c]onflict between employees represented by the same union is a recurring fact," and that gagging the union would weaken the collective bargaining and grievance process, the Court held that unions must be free to take a position on significant disputes and should not be neutralized when the issue is between two sets of employees. <u>Id.</u> at 371-372.

Since <u>Clark</u> is no longer recognized as good law, the court is not persuaded that it supports the plaintiffs' claim for relief in this case. <u>See</u> <u>Miller Brewing</u>, 562 F.Supp. at 1373 ("Clark is not good law"). <u>See also</u> <u>Gray</u>, 546 N.W.2d at 560 (explaining that <u>Humphrey</u>, 84 S.Ct. at 363, contradicts any suggestion in <u>Clark</u> that when a union chooses to represent a union member whose interests

are "diametrically opposed" to those of another member, the union has breached its duty of fair representation to the second member).

(c)  Fifth Circuit Precedent

The law in this circuit has long been that individual employees may not seek to vacate an arbitration award against the interests of its collective bargaining representative. See Acuff, 404 F.2d at 171-172.  In Acuff the arbitrator denied the grievances of a number of terminated employees and reinstated others without back pay.  Some of the employees moved to vacate the award.  The district court denied the motion, and the court of appeals affirmed holding that unless the union breached its statutory duty of fair representation the employees did not have the right to override the interests of the group as a whole by seeking to set aside the awards.  Id.  Asserting that "the interests of particular individuals are subordinated to the interests of the group," the Fifth Circuit reasoned that "[i]t would be paradoxical in the extreme if the union, which is authorized to decide whether a grievance is to be pursued to the arbitration state at all, could not be authorized to assume full responsibility for a grievance it did pursue, without the intervention of the individual union members immediately concerned."  Id.

**(1)  Mitchell and Bale**

Since Mitchell and Bale each filed grievances alleging that Continental had violated the terms of the CBA, and each granted the

IAMAW "full power of attorney, to represent [them] in all stages of
the [g]rievance [p]rocedure in the presenting and settling of
[their] grievance[s],"[35] and since neither Mitchell nor Bale alleges
that the IAMAW breached its duty of fair representation, the court
concludes that Mitchell and Bale are bound to abide by the decision
of the Board.  See Acuff, 404 F.2d at 171-172, and McNair, 768 F.2d
at 735.

### (2) Boorstein

Although, unlike Mitchell and Bale, Boorstein never filed a
grievance alleging that Continental had violated the terms of the
CBA and did not receive individual notice of the arbitration, the
court concludes that she, too, is bound to abide by the decision of
the Board because she is a member of the same collective bargaining
unit as Mitchell and Bale and, like them, was represented at the
arbitration by the IAMAW.  Plaintiffs cite Steward v. Mann, 351
F.3d 1338, 1344-1345 (11th Cir. 2003), as a case in which a group
of pilots who had not received notice of a pending arbitration
successfully brought suit to set aside the resulting award.

Steward involved the issue of whether the statutory notice
provision contained in 45 U.S.C. § 153 First (j) applied to
proceedings before an airline board of adjustment.  351 F.3d at

---

[35]See Exhibit 5 (grievance no. 06082), Exhibit 8 (grievance
no. 05446), and Exhibit 20 (grievance no. 06540) in the Joint
Appendix.

1344-1345.  The statutory notice provision requires an adjustment
board to "give due notice of all hearings to the employee or
employees and the carrier or carriers involved in any disputes
submitted to them."  45 U.S.C. § 153 First (j).  An employee is
"involved" for purposes of § 153 First (j) if she would be
adversely affected by the board's decision.  Id. at 1345 (citing
Estes v. Union Terminal Co., 89 F.2d 768, 770 (5th Cir. 1937)).
After holding that the due notice requirement of § 153 First (j)
applies to airline boards of adjustment, the court addressed the
specific issue before it:  whether a group of individual pilots who
were directly and adversely affected by the arbitration award were
entitled to notice of the arbitration hearing.  Id. at 1345-1346.
The court distinguished the facts before it from the typical case:

> [t]he Supreme Court has said that due notice is a
> flexible standard which takes into account the realities
> of the relationships between the employer, the union, and
> the employee.  See Elgin, J. & E. Ry. Co. v. Burley, 66
> S.Ct. 721, 723 & n.9 (1946).  In the usual case, the
> union represents the employee before the board.  Id. at
> 723; Estes v. Union Terminal Co., 89 F.2d 768, 769-771
> (5th Cir. 1937).  Thus, in the usual case, when the board
> gives the union, rather than the employee, notice of the
> hearing, courts will not automatically set aside the
> board's award for failure to give due notice to the
> employee. . .  This, however, is the unusual case in
> which the union does not represent the involved employees
> before the board.  We have said that, in these unusual
> cases, the board should personally notify the involved
> employees who are unrepresented.

Id. at 1346.  Unlike the "unusual" case presented in Steward where
the aggrieved employees were not represented by the union, this

case is the "usual case" because Boorstein, like Mitchell and Bale, was (and is) represented by the IAMAW.

Notice to the union constitutes adequate notice to employees like Boorstein who have not filed an individual grievance.  Bhd. of Ry., Airline & S.S. Clerks v. St. Louis Southwestern Ry., 676 F.2d 132 (5th Cir. 1982).

> The Board is obligated to notify an employee (or his representative) of any proceeding that may result in that employee's losing his position.  This requirement should not prove burdensome in most instances, since a letter to one or two union representatives normally will ensure that all 'involved' parties are apprised of the dispute.

Id. at 135-136.  Since the IAMAW had notice of the arbitration and represented the grievants at the arbitration, the court concludes that Boorstein and other members of plaintiffs' collective bargaining unit who never filed a grievance lack standing to challenge the resulting award without showing that the IAMAW breached its duty of fair representation.  See Acuff, 404 F.2d at 169-171, and McNair, 768 F.2d at 735.

3.  Conclusions

Grievances of five individual flight attendants that involved adjustments of non-competitive seniority for vacation time, pass and jump seat riding, and/or company seniority, all of which were made substantially after occurrence of the events that occasioned the adjustments, were brought together for binding arbitration at

which the grievants were all represented by the IAMAW.  The court concludes that Mitchell and Bale, two of the five individual grievants, lack standing to challenge the arbitration award because they have not alleged that the IAMAW breached its duty of fair representation.  The court concludes that Boorstein, a flight attendant who belongs to the same collective bargaining unit as Mitchell and Bale but who, unlike Mitchell and Bale, never filed a grievance, also lacks standing to challenge the arbitration award because, like Mitchell and Bale, she has not alleged that the IAMAW breached its duty of fair representation.  Accordingly, the court concludes that the RLA claims plaintiffs have asserted in their PR should be dismissed for lack of subject matter jurisdiction.  <u>See</u> <u>McNair</u>, 768 F.2d at 737 (determination that plaintiffs lack standing to sue robs the court of subject matter jurisdiction).  Since dismissals based on the court's determination that it lacks subject matter jurisdiction are not dismissals on the merits, plaintiffs' RLA claims will be dismissed without prejudice.  <u>See</u> <u>Air Line</u> <u>Pilots Association</u>, 567 F.Supp. at 72-74 (refusal to exercise jurisdiction establishes conclusive effect only on issue of federal jurisdiction).

**B.   Fifth Amendment Claims**

Plaintiffs allege that the Board denied their fundamental right to due process of law guaranteed by the Fifth Amendment to

the United States Constitution.   (PR ¶¶ 95-97)   Plaintiffs'
allegations are that

> 96. By denying [p]laintiffs Mitchell and Bale due notice
> that they would be required to represent themselves at
> the [a]rbitration hearing and by failing to take any
> steps to insure that they would not be made to endure
> trial by ambush, the Chairman and the Board deprived
> [p]laintiffs Mitchell and Bale of due process of law
> under the Fifth Amendment to the Constitution of the
> United States.
>
> 97. By denying [p]laintiff Boorstein due notice that her
> rights would be determined at the [a]rbitration and by
> denying her the opportunity to be heard and to fully
> participate in a proceeding wherein valuable rights of
> hers were decided without her knowledge and
> participation, the Chairman and the Board deprived
> [p]laintiff Boorstein and those similarly situated to her
> of due process of law under the Fifth Amendment to the
> Constitution of the United States of America.

(PR ¶¶ 96-97)   Plaintiffs argue that the Chairman and Board
violated their fundamental right to due process "[i]n [f]ailing to
[m]aintain a [r]ecord of the [h]earing at [w]hich the [c]laims of
[p]laintiffs Mitchell and Bale [w]ere [h]eard,"[36] and "in [f]ailing
to [p]rovide [n]otice of the [h]earing to [p]laintiff Boorstein and
[o]ther [s]imilarly [s]ituated [f]light [a]ttendants, the
[a]djustment [b]oard [v]iolated [f]undamental [d]ue [p]rocess
[p]rinciples of [n]otice and the [r]ight to be [h]eard [w]hen [i]t
[i]ssued [i]ts [a]ward [i]mpacting Boorstein's [s]eniority and the
[s]eniority of [a]ll [f]light [a]ttendants."[37]

---

[36]Plaintiffs' Brief in Support of Petition for Review, Docket
Entry No. 43, p. 13.

[37]<u>Id.</u> at p. 18.

Continental contends that this issue was put to rest by the Supreme Court in <u>Union Pacific Railroad v. Sheehan</u>, 99 S.Ct. 399 (1978) (per curiam), in which the Court held that

> [j]udicial review of Adjustment Board orders is limited to three specific categories: (1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption. . . Only upon one or more of these bases may a court set aside an order of the Adjustment Board.

<u>Id.</u> at 402. Despite this language some courts, including the Fifth Circuit, have held that a due process challenge may constitute an independent ground for judicial review of an arbitration award. <u>See</u> <u>Atchison, Topeka and Santa Fe Ry. Co. v. United Transportation Union</u>, 175 F.3d 355, 357 (5th Cir. 1999) (this circuit "has recognized a fourth basis for setting aside an award, in cases where the award failed to meet the requirements of due process") (<u>citing</u> <u>Brotherhood of Locomotive Engineers v. St. Louis Southwestern Railway Co.</u>, 757 F.2d 656, 660-661 (5th Cir. 1985)). <u>See also</u> <u>Hayes v. Western Weighing and Inspection Bureau</u>, 838 F.2d 1434, 1436 (5th Cir. 1988) (noting that later decisions interpreting Sheehan "have cabined the reach of the due process challenge"). Plaintiffs predicate their due process claims on the fact that the Board did not maintain a record of the proceedings before it, and the fact that Boorstein and other flight attendants like her who never filed a grievance did not receive notice of the arbitration or an opportunity to be heard at the arbitration.

1.  <u>Failure to Maintain a Record</u>

Since the court has already concluded that plaintiffs lack standing to challenge the arbitration award under the RLA, the court concludes that the Board's failure to maintain a record cannot have violated the plaintiffs' rights to due process because even if there were a record to review the court lacks jurisdiction to set aside the Board's decision based on its review of that record.  See <u>Cusak v. Trans-Global Solutions, Inc.</u>, 222 F.Supp.2d 834, 843 (S.D. Tex. 2002) (characterizing lack of a complete record from arbitration proceeding as "irrelevant" where court was without power to set aside decision of the arbitrators).

2.  <u>Lack of Notice to Boorstein and Others Similarly Situated</u>

Citing <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 70 S.Ct. 652, 657 (1950), plaintiffs argue that Boorstein as well as all other similarly situated flight attendants who never filed a grievance based on adjustments made to their non-competitive seniority were denied adequate notice of the pendency of the arbitration and an opportunity to present their claims regarding their seniority rights to the arbitral Board.[38]  In <u>Mullane</u> the Court stated that

> [a]n elementary and fundamental requirement of due
> process in any proceeding which is to be accorded
> finality is notice reasonably calculated, under all the

---

[38]<u>Id.</u> at pp. 18-19.

-26-

circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

Id. Citing Elmore v. Chicago & Illinois Midland Railway Co., 782 F.2d 94, 96-97 (7th Cir. 1986), plaintiffs assert that their "vested seniority rights are without question 'property' within the meaning of the due process clause of the Fifth Amendment," and citing Primakow v. Railway Express Agency, Inc., 56 F.Supp. 413, 416 (E.D. Wis. 1943), plaintiffs argue that notice to the IAMAW was not notice to them.[39]

Defendants argue that plaintiffs' non-competitive seniority should not be deemed a constitutionally protected property interest sufficient to trigger due process protections of the Fifth Amendment, and that even if it is, it should not be used to expand the notice and hearing rights contained in the RLA.

Assuming without deciding that plaintiffs possess a protected property interest in non-competitive seniority, the court concludes that plaintiffs have failed to allege facts sufficient to state a claim for violation of their Fifth Amendment rights to due process because in this circuit notice to the union constitutes notice to the employee. See St. Louis Southwestern Ry., 676 F.2d at 136 ("the Board is obligated to notify an employee (or his representative) of any proceeding that may result in that

---

[39]Id. at p. 19.

employee's losing his position.  This requirement should not prove
burdensome in most instances, since a letter to one or two union
representatives normally will ensure that all 'involved' parties
are apprised of the dispute").  The holding in <u>Primakow</u>, 56 F.Supp.
at 413, cited by the plaintiffs, is not to the contrary.

In <u>Primakow</u> the plaintiff-employee claimed a seniority status
superior to that of another employee, Ella Gregg, on whose behalf
the union filed a grievance.  At the ensuing arbitration proceeding
the union argued Gregg's cause, and the company argued the
plaintiff's cause.  Following an arbitration decision in Gregg's
favor, the plaintiff contended that she was not bound by the
decision because she was not a party to the controversy and had not
received notice of the hearings before the arbitral board.  The
court addressed the issues of whether the plaintiff had due and
timely notice of the hearings before the board, and whether by her
conduct she had waived such notice.  The court concluded that the
plaintiff was entitled to notice of the hearings because it could
not "be contended that the brotherhood was representing [her] in
the controversy[, and] . . . was in fact vigorously contesting her
claim and, in championing the cause of Mrs. Gregg, [was actually]
. . . oppos[ing] the interests of the plaintiff." <u>Id.</u> at 416.  The
court also concluded that since plaintiff had written letters to
the company about the matter in controversy that she had not waived
her right to notice of the arbitration.  <u>Id</u>.  Unlike the plaintiff

in Primakow who had written to the company about the controversy before the arbitration took place, but was neither represented at the arbitration nor notified by her union that the arbitration would take place, Boorstein never filed a grievance or took any other steps to protect her non-competitive seniority before the arbitration took place.  Nevertheless, Boorstein was represented by the IAMAW at the arbitration as a member of the grievants' collective bargaining unit.

Although St. Louis Southwestern Ry., 676 F.2d at 136, and Primakow, 56 F.Supp. at 413, concerned the RLA's statutory notice requirement, the Board's notice to the IAMAW in satisfaction of the RLA's statutory notice requirement necessarily satisfies the Fifth Amendment's notice requirement.  See Locomotive Eng'rs v. St. Louis Southwest Ry., 757 F.2d 656 (5th Cir. 1985) (recognizing due process as ground for judicial review but rejecting constitutional claim that was based on the same reasoning as a rejected statutorily-based claim for judicial review).

3.  Conclusion

The root requirement of procedural due process is that an individual be given notice and an opportunity to be heard before he or she is deprived of a property interest.  Mullane, 70 S.Ct. at 657.  Due process requires the opportunity to be heard at a meaningful time and in a meaningful manner.  Mathews v. Eldridge,

-29-

96 S.Ct. 893, 902 (1976).  Assuming without deciding that the CBA creates a protected property interest in non-competitive seniority the court concludes that plaintiffs have failed to allege facts that state a claim for violation of their right to due process because the court's conclusion that they lack standing to challenge the arbitration award under the RLA makes the Board's failure to maintain a record irrelevant, and because notice to the IAMAW constituted notice to Boorstein and the other flight attendants who never filed a grievance concerning Continental's adjustments to their non-competitive seniority.  Accordingly, the court concludes that the Fifth Amendment claims plaintiffs have asserted in their Petition for Review should be dismissed for failure to state a claim for which relief may be granted.

### III.  Conclusions and Order

For the reasons explained above, Plaintiffs' Petition for Review (Docket Entry No. 1) is **DENIED**, plaintiffs' RLA claims will be **DISMISSED without prejudice**, and plaintiff's claims for violation of their Fifth Amendment rights to due process will be **DISMISSED with prejudice**.

**SIGNED** at Houston, Texas, on this 5th day of August, 2005.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-30-